UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HEATHER LEE S.,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. C19-5576 MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by excluding and not considering 1,003 pages of medical records. (Dkt. # 14 at 2.) According to Plaintiff, the entire five-step analysis is fundamentally flawed because the ALJ failed to consider these records. (*Id.*) In the alternative, Plaintiff argues that – even without consideration of the excluded records – the ALJ erred in evaluating the Residual Functioning Capacity ("RFC") and her finding that Plaintiff can perform a significant number of jobs in the national economy. (*Id.*) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff filed her Title II application for disability on November 12, 2015, claiming that her disability onset date was July 15, 2014. (Dkt. # 14 at 2.) The claim was initially denied on March 1, 2016, and again upon reconsideration on June 9, 2016. (*Id.*) Plaintiff's hearing before the ALJ was on February 20, 2018. AR at 15. The ALJ denied Plaintiff's claim on June 18, 2018. *Id.* As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. *Id.* at 1. Plaintiff appealed the final decision of the Commissioner to this Court.

## III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The ALJ "has an independent duty to fully and fairly develop the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citations and quotations omitted). This duty exists even when the claimant is represented. *Brown v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). For example, where an ALJ relies on a medical expert who indicates the record is insufficient to render a diagnosis, the ALJ must develop the record further. *See Tonapetyan*, 242 F.3d at 1150.

## IV. DISCUSSION

### A. The ALJ Erred by Failing to Fully Develop the Record

Plaintiff's primary allegation of error relates to the ALJ's decision to decline to admit or even consider the 1,003 pages of late-submitted evidence from Franciscan Health of Enumclaw. AR at 16. The ALJ's decision was based on the representative's failure to notify the ALJ of additional evidence no later than five business days before the date of the scheduled hearing. *Id.* at 15 (citing 20 C.F.R. 404.935(a)). The representative notified the ALJ only two business days prior to the hearing and acknowledged that he had missed the five-day requirement. *Id.* at 1321. The ALJ also found that the representative's failure to timely notify the ALJ was not excusable under one of the exceptions to the five-day rule. *Id.* at 15-16 (stating "not only did the representative not timely inform the undersigned regarding outstanding evidence, he did not show that, despite good faith efforts, the evidence could not be obtained") (citing *Id.* at 1321 (representative's letter to ALJ stating that Plaintiff had been treating at Franciscan in Enumclaw

but that, in an effort to keep the costs down, Plaintiff had been attempting to obtain the records herself) and SSR 17-4p (regulations setting forth the five-day rule).) Plaintiff, through her representative, requested that the record be held open to allow for the submission of the relevant medical evidence; not that the hearing be postponed.

The ALJ was largely silent on Plaintiff's role in failing to provide the evidence to the ALJ, other than to say that the Plaintiff testified that she could not afford to order the medical records. AR at 16. Instead, the ALJ focused almost entirely on Plaintiff's representative's failures to timely provide the records or provide an explanation for the delay. *Id.* at 16 (noting that it appeared that Franciscan lost the request for records but that the representative "left collection of medical records to the last minute, despite obtaining a postponement of the claimant's first hearing"). The ALJ was also troubled by the fact that the representative "left it to the claimant to try to remedy the matter." *Id.* Plaintiff, however, was unsuccessful in obtaining the records because she lacked the funds to pay for them. *Id.* And, Franciscan claimed to have lost her first request for records. *Id.* The ALJ did not address Plaintiff's conduct but found the representative had not met his duties and therefore she declined to consider the additional records. *Id.*

The Court finds that the ALJ correctly identified the representative's deficiencies in the case but applied the wrong remedy. "A representative's failure to comply with his or her affirmative duties . . . could result in disciplinary action." SSR 17-4p. The Commissioner has the option of referring a representative to the Office of the General Counsel ("OGC") to determine whether there was a violation of the social security administration's rules. *Id.* However, the referral to the OGC for a potential violation "does not change [the ALJ's] duties with respect to the development of the evidence" pursuant to 20 C.F.R. 404.935 and 416.1540(c)(7). *Id.* While

1  the Court takes no position on whether the representative was in violation of the rules, the Court

2  notes that the remedy for the representative's failure to abide by the five-day rule was not to

3  exclude the evidence – without even reviewing it – but rather to refer the representative to the

4  OGC to determine if there was a concern about a potential violation.

5      Here, the proper question is whether the ALJ erred by failing to fully develop the record.

6  The *Tonapetyan* case cited above is particularly instructive. In that case, the ALJ "relied heavily"

7  on the testimony of a non-examining consulting medical expert. *Tonapetyan*, 242 F.3d at 1150-

8  51. During his testimony, the consulting medical expert repeatedly expressed "concern over the

9  lack of a complete record upon which to assess [the claimant's] mental impairment." *Id.* The

10  consulting medical expert also specifically recommended the ALJ obtain additional medical

11  evidence from the claimant's treating psychologist. *Id.* But the ALJ failed to follow through with

12  the consulting medical expert's recommendations. *Id.* Thus, by giving the consulting medical

13  expert great weight yet failing to follow through with his recommendations, the Ninth Circuit

14  concluded the ALJ "failed to develop the record fully and fairly" and committed reversible error.

15  *Id.*

16      In this case, the ALJ gave "some weight" to a State agency medical consultative

17  examiner, Dr. Russsel W. Faria, who examined the Plaintiff in February 2016. AR at 25. Dr.

18  Faria began by noting that Plaintiff normally sees Dr. McKeighan of Enumclaw Medical Center

19  and a neurologist in Tacoma. *Id* at 1400. With respect to Dr. McKeighan, Dr. Faria wrote in his

20  report that he appeared to be a physician at Franciscan Medical Clinic in Enumclaw. *Id.* Those

21  records were not available to Dr. Faria, however. *Id.* at 1405. Dr. Faria's impression of Plaintiff

22  was that she had a "complicated medical history" and, without the records from Dr. McKeighen,

23  a detailed assessment was impossible. *Id.* The ALJ nevertheless declined to consider the records

from Franciscan Medical Clinic in Enumclaw despite the consultative examiner's impression that a detailed assessment was impossible without them. Again, the ALJ made this decision based on the failures of the representative to meet the five-day rule.

The Court finds that the ALJ erred by failing to consider the additional medical records based on the representative's failure to meet the five-day rule (AR at 34-1036) and further erred by ultimately failing to fully develop the record as requested by Dr. Faria (*id.* at 1405). Importantly, the missing medical records are now part of the administrative record (*id.* at 34-1036). Yet, Plaintiff does not cite to even one page of these records as evidence that, had the ALJ considered the records, the outcome would have been different. Nor did she file a reply brief after this omission was raised by the Commissioner.

## B. Plaintiff Failed to Show How the ALJ Errors Were Harmful

Plaintiff only argues generally that because of the exclusion of 1,003 pages of relevant medical evidence from Plaintiff's primary care physician, the entire five-step analysis contained in the ALJ's decision is "fundamentally flawed." (Dkt. # 14 at 10.) The Commissioner responds that "notwithstanding the fact that the [1,003 pages of medical evidence] has been included in the Certified Administrative Record . . ., [Plaintiff] cites no evidence to support this proposition. She points to no medical opinions in those records that would have relevance to the alleged period of disability, much less to any medical opinions at all. In fact, she does not point to *any* evidence from the records at all." (Dkt. # 17 at 3.) Plaintiff did not file a reply brief so there is no response that points out what portion of the missing evidence would have affected the ALJ's decision. Accordingly, the Court finds that the ALJ's errors are harmless because Plaintiff has not provided any specificity in her opening brief as to why these errors were harmful to the ALJ's

analysis. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Carmickle v. Comm'r Social Sec.* 533 F.3d 1155, 1162-63 (9th Cir. 2008).

### C. The ALJ Did Not Err by Finding Plaintiff Could Frequently Finger

Plaintiff argues that the ALJ's determination that Plaintiff could frequently finger and handle objects was not supported by substantial evidence. (Dkt. # 14 at 12-13.) Among other more general arguments about Plaintiff's diagnoses, Plaintiff points specifically to Dr. Faria's opinion that given Plaintiff's neurologic diseases she is precluded from fine fingering or forceful grasping. (*Id.* at 14.) The ALJ gave Dr. Faria only "some weight" because she determined that the evidence "shows the claimant can perform a range of light work" and is not limited in her fingering or forceful grasping as opined by Dr. Faria. AR at 26. In rejecting Dr. Faria's limitations on fingering, the ALJ relied on Dr. Faria's exam findings that Plaintiff is able to dress, undress, put on shoes, button or zip clothing, make a fist, oppose the thumb against all four fingers, pinch and grip objects with normal strength. *Id.* at 26, 21 (citing *id.* at 1403).

Plaintiff argues that the exam was only a "momentary snapshot of [Plaintiff's] limitations" and the additional diagnostic records from Enumclaw would have supported Dr. Faria's findings that Plaintiff could only occasionally finger and handle objects. (Dkt. # 14 at 12.) Yet, Plaintiff does not cite to any medical records that are contrary to Dr. Faria's findings in the "momentary snapshot" of Plaintiff's exam. Instead, Plaintiff argues – without citation to the record – that "a complete review of the accepted medical records, the objective medical evidence only supports a conclusion that [Plaintiff] can *at best* occasionally finger or grasp." (*Id.* at 15.) The Court is satisfied that the ALJ's interpretation of Dr. Faria's examination findings (*i.e.*, Plaintiff is able to dress, undress, put on shoes, button or zip clothing, make a fist, oppose the thumb against all four fingers, pinch and grip objects with normal strength) was supported by

substantial evidence and the ALJ did not err in her RFC finding that Plaintiff could frequently finger.

### V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 14th day of January, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge